FORTIER,    APPELLANT,    v.    LARABIE    BROTHERS, BANKERS, INC., RESPONDENT.

(No. 5,749.)

(Submitted October 27, 1925. Decided November 25, 1925.)

[241 Pac. 237.]

*Escrows—Application of Payments—Money had and Received —Complaint—Insufficiency—Causes of Action.*

Complaint—Cause of Action—Necessary Allegations.
  1.  To state a cause of action the complaint must show a right in plaintiff and a violation of that right by defendant.

Same—Inconsistent Averments—Disregarded as Immaterial in Determining Sufficiency of Pleading.
  2.  Where in an action for money had and received the complaint alleged repeatedly that the money sought to be recovered was paid by plaintiff to defendant bank under an escrow agreement in virtue of a contract between plaintiff and a third person, his further allegation that payment had been made to it under a different contract was contradictory to and inconsistent with the averments first made and must be disregarded in determining whether the pleading was sufficient to state a cause of action.

Escrows—Application of Payments—Bank's Right to Apply Payments Made to Debt Due It from Assignor of Land Contract.
  3.  Where under an escrow agreement a bank agreed to receive a certificate of purchase of state lands and an assignment thereof to plaintiff, to receive for the credit of the assignor any payments made by the assignee, and to surrender the instruments to the latter when payments were completed, and later the assignor transferred his interest to the bank, the payments thereafter made

by the assignee became the money of the bank which, in the absence of any provision in the agreement that it should be applied to the debt owing the state for the land by the assignor, it had a right to apply to indebtedness due it from him.

Actions, 1 C. J., sec. 28, p. 937, n. 82.
Banks and Banking, 7 C. J., sec. 358, p. 660, n. 36 New.
Pleading, 31 Cyc., p. 85, n. 38; p. 102, n. 4; p. 104, n. 20.

*Appeal from District Court, Powell County; George B. Winston, Judge.*

ACTION by H. A. Fortier against Larabie Bros. Bankers, Incorporated, a corporation. From a judgment of dismissal plaintiff appeals. Affirmed.

*Messrs. Keeley & Keeley,* for Appellant, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

Where money is advanced for a particular purpose, and is not so applied, or is applied to another, an action for money had and received lies. (Note to 52 Am. Dec. 760; 27 Cyc. 862; 2 R. C. L. 781, 784, 785, 788, 794; *Messenger* v. *Votaw,* 75 Iowa, 225, 39 N. W. 280; *Cohen* v. *Wintman,* 236 Mass. 471, 128 N. E. 778; *Clark* v. *Jenness,* 188 Mass. 297, 74 N. E. 343; *Powder Valley State Bank* v. *Hudelson,* 74 Or. 191, 144 Pac. 494; *Craven* v. *Wright,* 114 Or. 692, 236 Pac. 1043; *Hellebust* v. *Bonde,* 42 N. D. 324, 172 N. W. 812; *Vanderpool* v. *Burkitt,* 113 Or. 656, 234 Pac. 289; *American Exchange Bank* v. *Loretta Mining Co.,* 165 Ill. 103, 56 Am. St. Rep. 236, 46 N. E. 202.)

*Messrs Scharnikow & Paul,* for Respondent, submitted a brief; *Mr. W. J. Paul* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

The plaintiff commenced this action for the purpose of recovering from the defendant the sum of $1,022.06 with interest thereon. The facts set out in the complaint as the basis of plaintiff's right to recover are as follows: On or about October 3, 1913, one P. L. King purchased from the state of Montana

a tract of land located in Powell county for the sum of $2,562.46, paying fifteen per cent of the purchase price in cash, and thereupon received a certificate of purchase therefor, under which the balance of the purchase price was to be paid in installments extending over a term of years. King made the payments on this certificate of purchase as they became due in the years 1914 and 1915. On October 30, 1915, King entered into an agreement with the plaintiff, H. A. Fortier, which, after stating that King had purchased the land, received a certificate of purchase therefor, made the payments above mentioned, and had made a legal assignment of his certificate of purchase of said lands to Fortier, provided: That the assignment should be placed in escrow with the defendant bank for delivery to Fortier when he had paid into the bank "for the credit and use" of King the sum of $3,942.25, with interest thereon—less the amount remaining due upon the certificate of purchase, "and, when the party of the second part [Fortier] has fully paid to the said bank, or to the party of the first part [King] the full amount of the equity of the party of the first part in and to the purchase price of said land, the party of the second part is to receive from said bank the said assignment and the said certificate of purchase, and is thereafter to make all payments on said lands directly to the state of Montana, at the times and in the amounts specified in the certificate of purchase, but, prior to the time the payments made by the party of the second part equal the equity of the party of the first part in and to said land, the said bank is to retain said assignment, certified [certificate] of purchase and other papers herewith placed in escrow, and the party of the first part [King] is to make all payments of principal and interest to the state of Montana when the same shall become due, and payable on said certificate of purchase."

The contract further provided that Fortier should have the right to the immediate possession of the land; that he should farm the same wholly at his own expense, and deliver one-half

of the crops to King or his agent, who agreed to accept and receive the same at current prices as payment on the contract.

The assignment of the certificate of purchase, together with a copy of the contract above mentioned, were then deposited with the defendant, which accepted them and agreed to act as the agent of both parties thereto, as set forth in the contract, and the same have been retained by the defendant at all times since.

On August 15, 1916, King paid to the state of Montana the principal and interest due under the certificate of purchase down to that time.

On June 22, 1917, the defendant loaned King $1,000, taking his promissory note therefor. At the same time, and in connection with the loan, the defendant and King entered into a written agreement which recited the making of the loan, that King had purchased the land mentioned in the certificate of purchase above referred to, that he had entered into the contract of October 30, 1915, above set forth, and to secure payment of the note assigned to the defendant all of his right in the certificate of purchase, as well as his interest in said contract, with full power to collect and enforce the payments to become due thereon, and agreed that, if he should fail to pay the note according to its terms, the defendant might sell his interest in the certificate of purchase and the contract of October 30, 1915, and apply the proceeds of such sale to the satisfaction of the indebtedness represented by the note; and, finally, "it is further understood and agreed by and between the parties hereto that the party of the first part [King] shall make all payments for said land according to the terms of the certificate of purchase as he agreed under the terms of said contract dated October 30, 1915, and hereinbefore referred to." On July 21, 1917, Fortier indorsed on this contract of assignment his consent thereto.

In addition to stating the facts above recited, the complaint alleged that on the 15th of August, 1917, there became due to

the state of Montana, as principal and interest on the cer-
tificate of purchase, the sum of $163.40, but that the same has
never been ·paid; that on the fifth day of January, 1918, the
plaintiff paid to the defendant, "by virtue of the terms, con-
ditions, covenants, and agreements contained in said contract
or agreement of October 30, 1915, and for no other purpose,"
the sum of $200, the same being one-half of the proceeds of
all the crops grown upon the land described in the certificate
of purchase during the farming year of 1917, but that, instead
of applying the said sum of money to the payment of the
amount due to the state under the certificate of purchase, the
defendant retained the same and applied it as a credit upon
the King note.

In separate paragraphs it is then alleged that on the fifteenth
day of August of the succeeding years, from 1918 to 1924,
inclusive, like installments of principal and interest became due
on the certificate of purchase and the payment by the ·plain-
tiff to the defendant "under and by virtue of the terms, con-
ditions, covenants and agreements contained in said contract
or agreement of October 30, 1915, and for no other purpose,"
one-half the proceeds of the crops raised on the land each
year, except that in the years 1920, 1921 and 1923 no pay-
ments were made because of the fact that there was a total crop
failure in each of the said years, and no crops were raised
or produced on the land.

It is further alleged that the total amount of the installments
of principal and interest due to the state by virtue of the
terms and conditions of the said certificate of purchase for
those years was $1,307.20, that the total amount of the pay-
ments deposited with defendant by the plaintiff was $1,022.06;
but it is alleged that all of said $1,022.06 should have been
applied by the defendant "under and by virtue of the terms,
conditions, covenants, agreements, and stipulations of the con-
tract of October 30, 1915, to the partial payment of the sums
of money becoming due and remaining unpaid to the state

of Montana under and by virtue of the terms and conditions of said certificates of purchase,'' and that on November 18, 1923, the plaintiff for the first time discovered that the defendant had not applied the payments made by him upon the indebtedness due to the state of Montana, but had retained the same as credit on the King note.

The complaint contains a general allegation: ''That the defendant received and accepted such payments made by the plaintiff for the express purpose of paying all sums of money due to the state of Montana, under and by virtue of the terms and conditions of said certificate of purchase, before applying any part of such payments so made by plaintiff toward the payment or partial payment of the said note of the said P. L. King,'' but this is immediately followed with the allegation: ''That the plaintiff, by virtue of said contract of October 30, 1915, had constituted the defendant its agent, to receive all sums of money due and owing by plaintiff on said contract, and to disburse said payments in the manner provided for by said contract of October 30, 1915.''

It is then alleged that, by reason of the above-recited facts, the consideration of the contract of October 30, 1915, has failed, to the detriment of plaintiff; that the plaintiff has elected to demand the return of the sums of money paid by him to the defendant; that on the eleventh day of February, 1924, the plaintiff demanded its return, with interest thereon from the time each payment was made, which demand was refused; and that the defendant still has in its possession and under its control all of the payments so made; and judgment is demanded for the amount of these several payments, with interest upon the same from the dates on which they were respectively made.

To this complaint the defendant demurred, on the ground that it did not state facts sufficient to constitute a cause of action. The court having sustained the demurrer, the plaintiff elected to stand on his complaint, whereupon a judgment

of dismissal was entered against him, and from this judgment he has appealed.

It is elementary that to state a cause of action a complaint [1, 2] must show a right on the part of the plaintiff and a violation of that right by the defendant. In view of the plaintiff's often repeated assertion in his complaint that all of the payments made by him to the defendant were made "under and by virtue of the terms, conditions, covenants, agreements, and stipulations of said contract of October 30, 1915," his general allegation that "the defendant accepted and received such payments made by the plaintiff for the purpose of paying all sums of money due to the state of Montana under and by virtue of the terms and conditions of said certificate of purchase" is contradictory to and inconsistent with the contract of October 30, 1915, and must be disregarded as immaterial. (*Crawford* v. *Pierse*, 56 Mont. 371, 185 Pac. 315.)

In support of their contention that the complaint states a [3] cause of action against the defendant, counsel argue that the contract of October 30, 1915, necessarily implies that it was the duty of King to apply all payments made thereon by the plaintiff to the payments required to be made to the state on the certificate of purchase; that, by acceptance of the assignment of the contract from King, the duty to make such payments devolved upon the defendant; that the defendant, by failing to perform this duty and diverting the funds to the payment of King's indebtedness to it, became liable to plaintiff for the amount so diverted, as for money had and received.

However, the contract is not open to such a construction. It is clear, unambiguous and free from doubt. To give it the effect contended for by counsel, would require that we read into it provisions which do not appear therein, either expressly or by inference. Under its provisions it appears that the defendant only assumed the duties of a depositary, and, as such,

[74 Mont. 602.]

they were: (a) To receive the certificate of purchase and assignment and hold them; (b) to receive for "the credit and use" of King the payments made to it by the plaintiff; and (c) when these payments totaled the amount required to be paid by the plaintiff, to surrender to him the certificate of purchase and the assignment.

The contract does not impose upon defendant any obligation to pay any amount to the state on the certificate of purchase, or to see that King did so. As to the money paid in by the plaintiff, the defendant's only duty was to hold it for the credit and use of King. This means only that, so soon as the plaintiff made a payment to the defendant under the contract, the money so paid immediately became King's, without any restriction whatever. This being so, King was entitled to do with his money as he chose, and, by assigning his interest in the contract to the defendant, the amount thereafter paid thereon by the plaintiff became the money of the defendant, without any restrictions thereon, and for these reasons the complaint wholly fails to show that the defendant had in its possession any money which the plaintiff was entitled to recover from it, and so fails to state a cause of action.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.